THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LAURA BYRNE, on behalf of herself, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 17-cv-18 |
| v. | ) ) | Honorable Young B. Kim |
| CENTEGRA HEALTH SYSTEM, | ) ) ) | |
| Defendant. | ) | |

JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND FINAL APPROVAL OF
<u>FLSA COLLECTIVE ACTION SETTLEMENT</u>

| CLASS COUNSEL: | ATTORNEYS FOR DEFENDANT: |
|---|---|
| James B. Zouras<br>Ryan F. Stephan<br>Teresa M. Becvar<br>Haley R. Jenkins<br>STEPHAN ZOURAS, LLP<br>205 North Michigan Avenue<br>Suite 2560<br>Chicago, Illinois 60601<br>312.233.1550<br>lawyers@stephanzouras.com | David L. Weinstein<br>Gregory P. Abrams<br>FAEGRE BAKER DANIELS LLP<br>311 S. Wacker Drive<br>Suite 4300<br>Chicago, Illinois 60606<br>(312) 212-6500<br>david.weinstein@faegrebd.com<br>gregory.abrams@faegrebd.com |

**INTRODUCTION**

Plaintiff Laura Byrne ("Named Plaintiff" or "Class Representative"), individually and on behalf of a class of individuals certified for settlement purposes (collectively, "Plaintiffs"), and Defendant Centegra Health System ("Centegra" or "Defendant") (together with Plaintiffs, the "Parties"), by and through their undersigned counsel, move for final approval of the Parties' settlement of Plaintiffs' claims of misclassification and unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.* The Parties' settlement of this hybrid FLSA collective action and IMWL, Fed. R. Civ. P. 23 ("Rule 23") class action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval. The Parties respectfully request the Court: (1) grant final approval of the Confidential Class and Collective Action Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit A, including the releases of claims as set forth in the Settlement Agreement; and (2) enter the Proposed Final Approval Order and Final Judgment, attached as Exhibit B.

On October 18, 2017, the Court took the first step in the settlement approval process by preliminarily approving the Parties' class and collective action settlement; certifying the proposed "Settlement Class" (defined below) pursuant to Rule 23; appointing the attorneys from Stephan Zouras, LLP as Class Counsel; appointing Named Plaintiff Laura Byrne as Class Representative; directing that Class Counsel mail notice to the Class Members; and setting a date for the Final Approval Hearing. (ECF No. 49.)

Class Members have been notified of the terms of the settlement, including the monetary relief, the allocation formula, and their right to object to or opt out of the settlement. Exhibit C, Declaration of James B. Zouras ("Zouras Decl.") ¶ 8; *see also* Zouras Decl. Ex. 2 (Notice

1

Materials). No Class Members objected to the settlement, and only one opted out of the settlement. Zouras Decl. ¶ 10. With such overwhelming support for the settlement and for the reasons stated below, the Court should grant final approval.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in the Parties' Joint Motion for Preliminary Approval of Class Action Settlement and Approval of FLSA Collective Action Settlement ("Preliminary Approval Motion") (ECF No. 45), Named Plaintiff Laura Byrne filed the above-captioned class and collective action on January 3, 2017, alleging that she and other registered nurses, physical therapists, occupational therapists, and speech therapists (collectively, "Field Clinicians") who performed clinical visits at patients' homes were misclassified by Centegra as exempt from the overtime requirements of the FLSA and IMWL and wrongfully deprived of overtime compensation. (ECF No. 1.)

Named Plaintiff sought to represent herself and allegedly similarly situated Field Clinicians as a collective action under the FLSA and a class action under the IMWL and Rule 23. On April 17, 2017, Plaintiff moved for conditional certification under the FLSA. (ECF No. 30.) Thereafter, in order to facilitate settlement discussions, the Parties stipulated to toll the statute of limitations for claims under the FLSA for all putative collective action members through, ultimately, September 30, 2017. (ECF Nos. 34, 38, 39.) Without the benefit of court-ordered notice to the putative members of the collective, four (4) individuals filed opt-in consent forms to join the FLSA collective action ("FLSA Opt-In Plaintiffs").

The Parties conducted extensive discovery and case analysis including: (a) the exchange of Rule 26(a)(1) disclosures; (b) the exchange of written interrogatories; (c) the exchange of thousands of pages of written discovery, including voluminous production of electronically stored

information ("ESI") in the form of over 95,000 lines of data from the "McKesson" electronic medical record software; (d) the deposition of the Named Plaintiff; (e) data analyses by Plaintiffs' undisclosed expert; (f) the review of Defendant's written policies and procedures; (g) the review of voluminous payroll records identifying, among other items, dates of employment and pay rates; and (h) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims and defenses. Zouras Decl. ¶ 6.

On August 29, 2017, the Parties, including the Class Representative, participated in a day-long mediation conducted by an experienced and well-respected private mediator, Professor Lynn Cohn. Zouras Decl. ¶ 7. With Mediator Cohn's assistance, the Parties reached an agreement to settle, memorialized at that time in a Memorandum of Understanding and ultimately, in the Settlement Agreement executed in full on October 6, 2017. *Id.* This settlement includes 40 Class Members, inclusive of the Named Plaintiff and the four FLSA Opt-In Plaintiffs. *Id.* ¶ 10. The Class is defined as "all individuals employed by Defendant as Home Health Department Field Clinicians (defined as registered nurses, physical therapists, occupational therapists, and speech pathologists) during the period January 3, 2014 through September 30, 2016 (the 'Class Period'),[1] who were classified as exempt, and whom Named Plaintiff contends were paid on a hybrid 'per visit' and hourly basis and were not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks" (the "Settlement Class"). Settlement Agreement ¶ A.1. Those employees are specifically identified by name in an exhibit to the Settlement Agreement. *Id*. at Exhibit 1.

On October 13, 2017, the Parties filed the Preliminary Approval Motion requesting, among

---

[1] For settlement purposes, Plaintiffs stipulated to a class period end date of September 30, 2016, based on information that Centegra modified its pay practice effective October 1, 2016.

other relief, that the Court grant preliminary approval of the Settlement Agreement and certify an FLSA collective action and Rule 23 class for settlement purposes. (ECF No. 45.) On October 18, 2017, the Court granted preliminary approval of the Parties' proposed settlement; certified the FLSA and IMWL classes; appointed Stephan Zouras, LLP as Class Counsel; appointed the Named Plaintiff as Class Representative; directed that notice be mailed; and set a date for a final approval hearing ("Preliminary Approval Order"). (ECF No. 49.)

## II.     SUMMARY OF THE SETTLEMENT TERMS

The terms of the settlement are contained in the Settlement Agreement and its attachments. There are no undisclosed side agreements between the Named Plaintiff and Defendant. Zouras Decl. ¶ 15.[2]

### A.     The Settlement Fund

The Settlement Agreement provides that Defendant will pay a Total Settlement Payment Amount of $425,000.00 as consideration for Class Members' promises and releases in the Settlement Agreement. Settlement Agreement ¶ A.2.a. The Total Settlement Payment Amount covers: (1) all approved attorneys' fees and costs in connection with Class Counsel's representation of Named Plaintiff, FLSA Opt-In Plaintiffs, and Class Members, including, without limitation, costs of settlement administration activities; (2) all individual settlement payment amounts to be paid to Named Plaintiff, FLSA Opt-In Plaintiffs, and Class Members who do not opt out of the settlement; and (3) all approved service payments to the Named Plaintiff and FLSA Opt-In Plaintiffs ("Service Payments"), which total $25,000.00. *Id.* ¶ A.2.b.

---

[2]     In conjunction with the class settlement, Named Plaintiff executed a separate individual settlement agreement and general release that is attached to the Settlement Agreement as Exhibit 2 and was approved by the Court. *See* ECF No. 49 at ¶ 12.

4

### B. Eligible Class Members

Class Members were not required to take any action to receive a payment. All Class Members employed by Centegra from January 3, 2014 through September 30, 2016 who did not opt out and who endorse their settlement checks will receive a payment. Settlement Agreement ¶ B.3.d. The only funds that will remain with Centegra are the $250.00 payment allocated to the sole Class Member who opted-out of the settlement and any funds from checks that are not cashed, if any. *Id.* ¶¶ B.3.d; B.5.a; Zouras Decl. ¶ 11. Thus, barring any un-cashed checks, the total amount of settlement is $424,750.00 (*i.e.*, $425,000.00 - $250.00).

### C. Releases

Class Members who did not opt-out will release all state and local wage and hour claims. Settlement Agreement ¶ C.1. All Class Members who negotiate their settlement checks will opt-into the collective action (except for the four FLSA Opt-in Plaintiffs, who have already opted in) and also release their federal wage and hour claims under the FLSA. *Id.* ¶ C.2. The sole Class Member who opted out is not bound by the settlement. *Id.* at ¶ B.2.d.

### D. Allocation Formula

The computation of the payments to Class Members is based on employee payroll data and productivity and mileage data from the McKesson electronic medical record software utilized by Centegra. Settlement Agreement ¶ A.3.b. The settlement funds are allocated to each Class Member on a pro rata basis based on the estimated number of overtime hours worked (i.e., in excess of 40 hours per workweek) during the Class Period. *Id.* ¶ A.3.a. The allocation method provided compensation for a total of 3,826 workweeks for 41 Class Members (including the Named Plaintiff and the sole opt-out Class Member, before that individual opted out) during a Class Period spanning over two-and-a-half years and results in an average settlement payment of approximately

5

$6,000.00 per Class Member, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and Service Payments. Zouras Decl. ¶ 12. Class Members whose data show no workweeks with more than 40 hours during the Class Period were allocated a minimum payment of $250.00. Settlement Agreement ¶ A.3.a.

### E. Service Payments, Attorneys' Fees, and Litigation Costs

Contemporaneous with this Motion, Plaintiffs will apply for Court approval, and Centegra will not oppose, distribution of Service Payments to the Named Plaintiff and each of the four FLSA Opt-In Plaintiffs, paid out of the Total Settlement Payment Amount, that do not exceed $15,000.00 to the Named Plaintiff and $2,500.00 to each FLSA Opt-In Plaintiff – for $25,000.00 total. Settlement Agreement ¶ A.4. In addition, Class Counsel will petition the Court, unopposed, for approval of an award of attorneys' fees and costs of thirty-six percent (36%) of the Total Settlement Payment Amount (or $153,000.00). *Id.* ¶ A.5.a. Class Counsel submits, and Centegra does not dispute, that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

### F. Settlement Administration

On October 23, 2017, Class Counsel mailed the Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice") and Election to Opt Out of Settlement and Class Action Form (collectively, the "Notice Materials") to 36 Class Members. Zouras Decl. ¶ 8.[3] After the Notice Materials were mailed, Class Counsel received one set of Notice Materials returned by USPS with an undeliverable address. *Id.* ¶ 9. Class Counsel received an updated address from

---

[3] The Named Plaintiff and four FLSA Opt-In Plaintiffs were independently informed of the settlement by Class Counsel, who they previously chose to represent them for all purposes in the lawsuit. Settlement Agreement ¶ B.3.b.

6

counsel for Centegra and promptly re-mailed the Notice Materials to the new address. *Id*.

### G. Objections and Opt-Outs

The deadline to object or opt out of the settlement was December 22, 2017. This deadline has now passed. One Class Member requested exclusion from the settlement, and no Class Member objected to the settlement. Zouras Decl. ¶ 10.

### III. THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In *Eisen*, the Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id*. Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175. As set forth in Section II.F above, the Parties' effort to effectuate notice by mail to the Class Members meets the requirements of Rule 23(c)(2)(B).

### IV. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFFS' FLSA AND IMWL CLAIMS

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th

Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

As set forth in detail below, the proposed settlement is fair, reasonable and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of the FLSA and IMWL and thus should be approved.

  A. **<u>The Settlement Is Fair, Reasonable, and Adequate</u>**

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012

WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

Additionally, courts have construed the FLSA as requiring approval of a settlement that would release FLSA claims. When a court evaluates an FLSA settlement, its review "requires a similar assessment. Specifically, the Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted).[4] When supervising a settlement of wage and hour claims, courts often consider many of the same factors considered under Rule 23, including the complexity, expense, and likely duration of the litigation, the reaction of the class to the settlement, the stage of the proceeding and the amount of discovery completed, and the reasonableness of the settlement range in light of the risks of establishing liability, damages, and maintaining the class action through the trial. *Butler*, 2011 WL 4729789 at *9 n.9 (citations omitted). All of these factors weigh in favor of final approval.

    **1.    The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor).**

Centegra agreed to settle this case for a maximum amount of $425,000.00 for a class of 41 Field Clinicians. Settlement Agreement ¶ A.2.a; Zouras Decl. ¶ 12. The Total Settlement Payment Amount covers: (1) all approved attorneys' fees and costs in connection with Class Counsel's representation of Named Plaintiff, FLSA Opt-In Plaintiffs, and Class Members, including, without limitation, costs of settlement administration activities; (2) all individual settlement payment

---

[4] Similarly, this Court has held that a court must determine whether a settlement of claims under the IMWL is a fair and reasonable resolution of a bona fide dispute under the IMWL. *See, e.g., O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047, 1050 (N.D. Ill. 2002) (holding that a release of IMWL claims, like claims under the FLSA, must be supervised by a Court or the Department of Labor).

9

amounts to be paid to Named Plaintiff, FLSA Opt-In Plaintiffs, and Class Members who do not opt out of the settlement; and (3) all approved Service Payments to the Named Plaintiff and FLSA Opt-In Plaintiffs, which total $25,000.00. *Id.* ¶ A.2.b. After the close of the notice period, $246,750.00 is designated to be distributed in individual settlement payments (exclusive of Service Payments) to the Named Plaintiff, four FLSA Opt-In Plaintiffs and 35 Class Members who did not opt out of the settlement, which averages to an award of approximately $6,000.00 per participating Class Member. Zouras Decl. ¶¶ 11-12. This is a substantial settlement that represents a significant value, particularly given the attendant risks of litigating the merits of the case through Rule 23 class certification, opposition to FLSA conditional certification and potentially FLSA decertification, summary judgment proceedings and/or trial, and any appeals of decisions on those matters.

This settlement provides much more than "a fraction of the potential recovery." *Cf. Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Based on Class Counsel's investigation, the settlement amount distributed directly to the Class Members represents, in Class Counsel's view, approximately 80% of the Settlement Class's likely maximum potential claim for overtime wages, exclusive of liquidated and other damages under the FLSA and IMWL. Zouras Decl. ¶ 13. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

In evaluating the strength of a plaintiff's case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness

hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. On liability, Plaintiffs would have to overcome Defendant's defense that Plaintiffs were exempt professional employees under the FLSA and IMWL by showing that Defendant uniformly compensates Field Clinicians on a combined "per visit" and hourly basis that fails to meet the salary or fee basis tests under the FLSA. Few courts have addressed this precise issue, and the ones that have are non-precedential in this district. *See Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310, 1323 (N.D. Ga. 2013) (granting partial summary judgment for collective class of home care clinicians on the grounds that their non-visit fees were improperly based on the amount of time it takes to complete a non-visit activity, *i.e.*, on an hourly basis); *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 838-39 (6th Cir. 2002) (a compensation plan that combines fee payments and hourly pay does not qualify as a fee basis because it ties compensation, at least in part, to the number of hours or days worked and not on the accomplishment of a given single task). Thus, as in any complex action, the Plaintiffs generally face uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one

11

may be of the outcome of litigation, such confidence is often misplaced"). Plaintiffs also would have to establish Class Members worked more than 40 hours per week in order for liability to attach (*see* 29 U.S.C. § 207), and Defendant contends that records produced in this matter show that Field Clinicians often worked short of that threshold. *See generally Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F. Supp. 3d 1295, 1303 (N.D. Ga. 2014) (decertifying collective because "the fact that some Plaintiffs did not actually work overtime hours, creates a disparate factual setting among the individual Plaintiffs as the issue of liability is not susceptible to common proof").

In addition, a trial on the merits would involve significant risks for Plaintiffs as to damages. Bona fide disputes exist as to whether the Class Representative and the Class Members could credibly establish the hours of overtime they worked, if any, and the weeks in which they worked overtime.

The proposed settlement thus ensures that the Class Members who did not opt out will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. In light of the substantial recovery this settlement provides, and the attendant risks of litigation, this factor therefore weighs in favor of final approval.

### 2. Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor).

The second factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*,

12

778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money for the class; "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

If litigation were to continue, extensive class discovery would be required to establish liability and damages. Here, further litigation would certainly result in fully briefed motions for class certification, opposition to FLSA conditional certification and potentially decertification, summary judgment on liability and would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in favor of final approval.

    **3.**    **The Reaction of the Class Has Been Positive (Third Factor).**

The absence of objections by Class Members is significant in determining whether the proposed settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County*

*v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members") Here, only one Class Member has requested exclusion from the settlement. No Class Members objected to the settlement. Thus, this factor also favors approval of the settlement.

### 4. Competent Counsel for Both Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325); *Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, here, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200. The settlement was reached after intense negotiation with the dedicated assistance and oversight of an experienced and well-respected private mediator, Professor Lynn Cohn.

As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

*Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions, particularly wage and hour class actions of exactly this kind, and are familiar with the strengths and weaknesses of the claims and defenses. *See* Zouras Decl. ¶¶ 4-5, 14; *see, e.g.*, *Lukas v. Advocate Health Care Network and Subsidiaries*, No. 14 Civ. 2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015). Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation,

discovery, and appeals, and the adequacy of the settlement reached. *Id.* ¶ 14.

Defendant's counsel also agrees this settlement is fair and reasonable, as evidenced by their execution of the Settlement Agreement. This factor therefore weighs in favor of final approval.

### 5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex hybrid class and collective action was resolved approximately nine months after it was initiated. This period involved extensive discovery, including research, analysis, investigation, the exchange of thousands of pages of written discovery, including voluminous payroll records and the production of ESI in the form of over 95,000 lines of McKesson data, Named Plaintiff's deposition, and consultation with experts, among other things. *See* Zouras Decl. ¶ 6. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the settlement. *Id* at ¶ 14. Given the significant amount of time and resources spent by the Parties in discovery and advancing settlement negotiations, this fifth, and final, factor favors final approval of the settlement.

### B. Approval of the Release of Class Federal and State Wage and Hour Claims Is Appropriate.

The Parties also request that the Court specifically approve the release of Class Members' federal and state wage and hour claims, as defined in the Settlement Agreement ¶¶ C.1 and C.2. In this case, as explained above, the terms of the settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, and analysis. Because the Settlement Agreement, including Class Members' releases of their federal and state wage and hour claims, resolves a bona fide dispute and was reached after vigorous arm's-length negotiations, it should be approved. *See, e.g.*, *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Butler*, 2011 WL 4729789 at *9 n.9.

## **CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court grant their Joint Motion for Final Approval of Class Action Settlement and Final Approval of FLSA Collective Action Settlement and enter the Proposed Final Approval Order and Final Judgment, attached hereto as Exhibit B.

Dated: January 22, 2018            Respectfully Submitted,

*/s/ James B. Zouras*
James B. Zouras
Ryan F. Stephan
Teresa M. Becvar
Haley R. Jenkins
Stephan Zouras, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
312.233.1550
lawyers@stephanzouras.com

**CLASS COUNSEL**

*s/ David L. Weinstein*
David L. Weinstein
Gregory P. Abrams
Faegre Baker Daniels LLP
311 S. Wacker Drive
Suite 4300
Chicago, Illinois 60606
(312) 212-6500
david.weinstein@faegrebd.com
gregory.abrams@faegrebd.com

**ATTORNEYS FOR DEFENDANT**